UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
RILEY MILAN,

                               Plaintiff,

                -against-

SPRINT CORPORATION and RAMON GALAN *individually*

                            Defendants.
-----------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff, RILEY MILAN, by her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. Seq. ("Title VII"), and the New York State Human Rights Law, New York State Executive Law ☐ 296 *et. Seq* and seeks damages to redress the injuries Plaintiff has suffered as a result of being **sexually harassed, subjected to a hostile work environment, discriminated against and retaliated against on the basis of her gender (female) by her supervisor Ramon Galan, a manager for Sprint Corporation.**

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. ☐1391(b), in that a majority of the

1

acts alleged herein occurred within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") on or before December 21, 2015. Plaintiff's EEOC Charge of Discrimination Number is 520-2016-00843.

6. Plaintiff has complied with all the necessary steps required to exhaust her administrative remedies.

7. Plaintiff has requested a Notice of Right to Sue from the EEOC because more than 180 days have passed since the filing of her Charge of Discrimination.

8. The EEOC has failed to issue a Notice of Right to Sue to which Plaintiff is entitled under 29 CPR § 1601.28(a)(2).

9. Plaintiff's right to sue is conditioned only on her taking all steps necessary for administrative exhaustion, not on EEOC's performance of its administrative duties.

## PARTIES

10. That at all times relevant hereto, Plaintiff RILEY MILAN ("MILAN") is a resident of the State of New York, County of NASSAU.

11. That at all times relevant hereto, Defendant SPRINT was a for profit foreign corporation, duly existing pursuant to, and by virtue of, the laws of the State of Delaware; regularly conducting business within the State of New York.

12. That at all times relevant hereto, Defendant SPRINT, is headquartered or has its principal place of office in Overland Park, Kansas.

13. That at all times relevant hereto, Defendant SPRINT owns and/or operates a corporate office at 1457 Northern Blvd, Manhasset, New York, 11030.

14. That at all times relevant hereto, Plaintiff was an employee of Defendant SPRINT working

in a location with Nassau County, New York.

15. Upon information and belief, at all times material, Defendant RAMON GALAN ("GALAN") was and is an individual residing in the State of New York.

16. That at all times material, Defendant GALAN was an employee of Defendant SPRINT, holding the position of "Lead Retail Sales Consultant."

17. That at all times relevant hereto, Defendant GALAN was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant GALAN had the authority and/or the influence over those with authority to effect the terms and conditions of Plaintiff's employment; including but not limited to the ability to hire, fire, discipline, promote, and demote Plaintiff.

18. Defendant SPRINT and Defendant GALAN are collectively referred to herein as "Defendants."

## MATERIAL FACTS

19. On December 22, 2014 Plaintiff commenced her employment with Defendant SPRINT as a Retail Sales Consultant earning $13.24 an hour plus commission.

20. Unbeknownst to Plaintiff, Defendant GALAN had inquired and gained information about Plaintiff. He had learned Plaintiff had been sexually assaulted in the past.

21. On or about March 5, 2015, Defendant GALAN unexpectedly asked Plaintiff if she had ever been raped.

22. In or around March 2015, Defendant GALAN began to sexually harass Plaintiff. Defendant GALAN, who was Plaintiff's supervisor, intentionally used the information he had learned, to prey on Plaintiff and to inflict emotional distress upon her.

23. On or about March 9, 2015, after Plaintiff closed the store, Defendant GALAN offered Plaintiff a ride to the Long Island Railroad station in Manhasset. Due to the weather, Plaintiff accepted Defendant GALAN's offer. Once they arrived at the train station, Defendant GALAN asked Plaintiff to check what time her train was scheduled to arrive. Plaintiff informed Defendant GALAN that her train was arriving in fifteen (15) minutes and that she would wait outside for her train. Defendant GALAN insisted that Plaintiff wait in his car. **At that time, Defendant GALAN attempted to kiss Plaintiff in his car.** Plaintiff pushed Defendant GALAN off of her and told him that she was not interested. **Despite plaintiff's clear rejection, Defendant GALAN proceeded to push himself onto her and kiss her.** Plaintiff then unlocked the door and got out of the car.

24. **On or about March 14, 2015 after Plaintiff closed the store Defendant GALAN forced Plaintiff to get into his car and perform oral sex on him. When plaintiff tried to say no, Defendant GALAN threatened Plaintiff's employment and told Plaintiff that if she does what he wants then she would advance in her career.** At that time, Defendant GALAN placed both of his hands around her neck and forced her to perform the sexual act. Defendant GALAN did not let go of the grip he had around her neck until after she act was completed. After this traumatic incident, Plaintiff confided in a friend telling him about what happened.

25. On or about March 16, 2015, Defendant GALAN accused Plaintiff of her register being short on money. Plaintiff's register had never been short before. She had carefully counted the money in the drawer before stepping on the sales floor. Plaintiff had also documented each financial transaction on post-it notes to keep track of the exchanged money. Moreover, Plaintiff had not yet closed her register for the day; she had previously been instructed to leave her shift early to attend a mandatory corporate training. Plaintiff felt

Defendant GALAN's accusation of this terminable offense, was a type of blackmail; either she engage in sexual acts with him or face the repercussions of losing her job.

26. **On or about March 21, 2015, Defendant GALAN told Plaintiff, "your ass looks great in those jeans", slapping her butt as he walked by**. A customer of Defendant SPRINT, witnessed this and asked Plaintiff, "is that even legal?"

27. **Later that day, after driving Plaintiff to a location close to the LIRR, Defendant GALAN forced Plaintiff to perform oral sex on him again.** Plaintiff tried to fight him off but when she tried to scream at him to stop he would force her head down constricting her airway. Due to Plaintiff's small size, she couldn't fight him off. Defendant GALAN threatened Plaintiff by telling her that if she told anyone, nobody would believe her.

28. On or about March 27, 2015, Defendant GALAN made another unwelcomed advance toward Plaintiff. After setting the alarm and exiting the store for the night, Plaintiff had to take out the garbage. Defendant GALAN told Plaintiff that he had to show her something. Plaintiff assumed Defendant GALAN would show her where the garbage was to be disposed. Normally, the supervisors only have the male staff take the garbage out due to the weight of the bags, so Plaintiff was not familiar with the disposal procedure and dumping location. Defendant GALAN tossed the cardboard into a dumpster and left the bags in front of the dumpster. Plaintiff followed him, assuming that the bags were to be disposed of in this location. Instead, Defendant GALAN led Plaintiff down a dark set of stairs to a basement alleyway. It was in this alley that Defendant GALAN forced Plaintiff up against the wall and covered her mouth until she stopped fighting his advances. Defendant GALAN then raped Plaintiff.

29. On or about April 1, 2015, Defendant GALAN forced Plaintiff to have sex with him in his car. By this time, Defendant GALAN had been tampering with her sales and altering

5

transactions for customers. On one occasion, Defendant made it appear that Plaintiff violated company policy by modifying a sale to appear as if she had sold a very expensive accessory to herself.

30. Plaintiff felt trapped and that she had no choice but to acquiesce with Defendant GALAN's sexual advances or else her job would be jeopardized. Every time Plaintiff tried to refuse Defendant GALAN's advances, he would retaliate against her.

31. **On April 2, 2015, Defendant GALAN made Plaintiff meet him at the BP Gas station during her lunch break. Upon meeting at the gas station, Defendant GALAN instructed Plaintiff to get into his car. As they drove around the neighborhood, Defendant GALAN forced Plaintiff to perform oral sex onto him.**

32. On April 3, 2015, Defendant GALAN attempted to force Plaintiff to perform oral sex and engage in sexual activity with him. Defendant told Plaintiff that he would adjust her time for the time she was out of the store.

33. On April 6, 2015, Defendant GALAN attempted to blackmail Plaintiff by claiming that her register was $120.00 short.

34. On April 7, 2015, while discussing the register situation, Defendant told Plaintiff, "I don't have to give you explanation, you just need to know it is fixed. End of conversation". Later that day, Defendant GALAN texted Plaintiff to wait for him at the gas station. Defendant GALAN then picked Plaintiff up at the BP gas station and drove her from Manhasset to a house in Long Island. **While they were sitting in traffic, he forced her to perform oral sex.** When they got to the house, Defendant GALAN first confirmed that nobody was home. Defendant GALAN then forced Plaintiff to have sex with him. Defendant GALAN then forced Plaintiff to shower before dropping her off at the Patchogue LIRR station.

35. On or about April 8, 2015, Defendant GALAN was transferred to a new store.

6

36. On or about May 2015, Plaintiff requested a transfer to the Westbury, New York store.

37. On or about the second week of August, 2015, Defendant GALAN came to the Westbury, New York Sprint Store and hugged her, resulting in a massive panic attack. Defendant GALAN then contacted Plaintiff via snapchat, asking her, "when are we gonna fuck?"

38. Plaintiff told Defendant GALAN that, "this is wrong, you are married" and he replied, "never stopped me before." Plaintiff then asked Defendant GALAN, "Why are you doing this to me?" and blocked him on her cell phone, email, and all social media accounts.

39. On or about October 28, 2015, Plaintiff saw Defendant GALAN's name on the Westbury schedule. Panicked, Plaintiff told Manager Nelson Justinico that she was involved in a coerced sexually abusive situation with Defendant GALAN.

40. On or about October 29, 215, Plaintiff's social worker reported Plaintiff's situation to the Nassau County Police Department, the Human Resources Ethics hotline, and to Plaintiff's District Manager.

41. On or about October 30, 2014, Plaintiff went to the Nassau County Police Department and attempted to get a Protection Order against Defendant GALAN.

42. Plaintiff reported the rape to Long Island Jewish, Planned Parenthood, and her doctors.

43. Plaintiff went out on leave from Defendant Sprint

44. On or about November 11, 2015, Defendant Sprint's human resources representative, Sarah King, contacted Plaintiff about appearing before their investigator regarding her complaint.

45. On or about November 11, 2015, Plaintiff's attorney contacted Ms. King twice, informing her of Plaintiff's willingness to cooperate in the investigation, but the necessity that counsel be present. Counsel also advised Ms. King to contact the office to arrange for a mutual date and time; requesting all further communication to come through the office.

36. On or about May 2015, Plaintiff requested a transfer to the Westbury, New York store.

37. On or about the second week of August, 2015, Defendant GALAN came to the Westbury, New York Sprint Store and hugged her, resulting in a massive panic attack. Defendant GALAN then contacted Plaintiff via snapchat, asking her, "when are we gonna fuck?"

38. Plaintiff told Defendant GALAN that, "this is wrong, you are married" and he replied, "never stopped me before." Plaintiff then asked Defendant GALAN, "Why are you doing this to me?" and blocked him on her cell phone, email, and all social media accounts.

39. On or about October 28, 2015, Plaintiff saw Defendant GALAN's name on the Westbury schedule. Panicked, Plaintiff told Manager Nelson Justinico that she was involved in a coerced sexually abusive situation with Defendant GALAN.

40. On or about October 29, 215, Plaintiff's social worker reported Plaintiff's situation to the Nassau County Police Department, the Human Resources Ethics hotline, and to Plaintiff's District Manager.

41. On or about October 30, 2014, Plaintiff went to the Nassau County Police Department and attempted to get a Protection Order against Defendant GALAN.

42. Plaintiff reported the rape to Long Island Jewish, Planned Parenthood, and her doctors.

43. Plaintiff went out on leave from Defendant Sprint

44. On or about November 11, 2015, Defendant Sprint's human resources representative, Sarah King, contacted Plaintiff about appearing before their investigator regarding her complaint.

45. On or about November 11, 2015, Plaintiff's attorney contacted Ms. King twice, informing her of Plaintiff's willingness to cooperate in the investigation, but the necessity that counsel be present. Counsel also advised Ms. King to contact the office to arrange for a mutual date and time; requesting all further communication to come through the office.

46. Defendant Sprint did not return Plaintiff's counsel's call.

47. On or about November 20, 2015, Sarah King contacted Plaintiff again, causing her additional emotional distress, obliging her to return to work November 25, 2015 or to resign her position.

48. Plaintiff was constructively discharged on or about February 18, 2016. Plaintiff emailed Sarah King indicating, "I feel that I have no choice but to involuntarily resign my position." Plaintiff also indicated that she was sexually harassed and assaulted by her manager and although she reported his sexual harassment to Defendants she was made to feel punished and retaliated against.

49. Plaintiff would not have been sexually harassed and retaliated against by Defendants but for Plaintiff's gender.

50. The above acts are only an example of the acts Plaintiff was exposed to on a regular basis by Defendants.

51. Plaintiff was regularly exposed to a sexually offensive, violent and hostile work environment.

52. Plaintiff has been unlawfully discriminated against, was humiliated, retaliated against, has been degraded, victimized and embarrassed; and as a result suffers loss of rights, emotional distress, loss of income, earnings.

53. Plaintiff's performance was, upon information and belief, above average during the course of employment with the Defendants.

54. Plaintiff was treated differently (sexually harassed and propositioned) by Defendant GALAN because of her gender (female).

55. Upon information and belief Defendant GALAN's sexually harassing behavior was also motivated by a general hostility toward Plaintiff based on her gender.

56. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

57. As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress, physical ailments, and physical injuries.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

59. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

63. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender (sexual harassment that resulted in a hostile work environment).

9

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (Not Against Individual Defendants)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate

10

against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendants violated the section cited herein as set forth.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE LAW

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

72. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

### FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. New York State Executive Law ☐296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

75. Defendants violated the section cited herein as set forth.

### JURY DEMAND

76. Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

11

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964 and the New York State Executive Law □296 *et. seq.,* in that Defendants discriminated against Plaintiff on the basis of her gender with sexual harassment and retaliated against her as well;

B. Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C. Awarding damages to the Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       August 10, 2016

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                                        _/s/ Marjorie Mesidor_
                                        Marjorie Mesidor
                                        Brittany A. Stevens
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, NY 10006
                                        (212) 248-7431 (telephone)
                                        mmesidor@tpglaws.com
                                        bstevens@tpglaws.com